<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL SERY, MATTHEW SERY and DAVID SERY, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.  06-1026(SRC) |
| | : | |
| ·v | : | **OPINION** |
| | : | |
| FEDERAL BUSINESS CENTERS, INC., PETER C. VISCEGLIA, CHRISTINE KANTER, and FRANK D. VISCEGLIA, JR., | : | |
| | : | |
| Defendants. | : | |

<u>**CHESLER, U.S.D.J.**</u>

This matter comes before the Court on Defendants' motion for summary judgment filed pursuant to FED. R. CIV. P. 56 (docket # 109).  Defendants argue they are entitled to summary judgment on Plaintiffs' statutory claim for oppression of minority shareholders under N.J.S.A. 14A:12-7; on Plaintiffs' claim that Defendants Kanter and Peter Visceglia breached fiduciary duties to Plaintiffs as co-executors of Plaintiffs' mother's estate; and on Plaintiffs' claim that Defendants Kanter and Peter Visceglia breached their fiduciary duties to Plaintiffs as trustees of the testamentary trusts that received Plaintiffs' inheritance from their mother.  Defendants also seek costs and attorneys' fees under N.J.S.A. 14A:12-7(10).  For the reasons set forth below, Defendants' motion for summary judgment will be **GRANTED**.  Defendants' request for costs and attorneys' fees will be **DENIED**.

## FACTUAL BACKGROUND

Federal Business Centers, Inc. ("FBC") is a corporation founded by Plaintiffs' maternal grandfather ("Founder"), who is also the father of individual Defendants Kanter and Peter Visceglia and the grandfather of Defendant Frank D. Visceglia, Jr.  This case arises out of a dispute concerning how the Founder intended to transfer his ownership of FBC to his children and/or grandchildren during his lifetime.[1]  Although the Founder is still alive, the parties do not dispute that he is now incompetent to testify.

It is uncontroverted that the Founder made inter vivos transfers of voting and non-voting shares of FBC's stock to his children and grandchildren over the course of many years.  Plaintiffs contend that the Founder intended to distribute his largesse equally per grandchild (per capita distribution) but Defendants claim that the Founder intended to distribute FBC stock in a manner that would equalize ownership of the FBC stock among the families of his four children, such that ownership would be roughly equal per nuclear family unit, not per grandchild (per stirpes distribution).  This is significant because three of the Founder's four children had three children of their own, whereas there were four children in Plaintiffs' family.  Thus, per capita distribution would result in a larger grant to Plaintiffs than would per stirpes distribution, whereas the opposite is true for the individual Defendants and their families.

Plaintiffs have raised two claims in this lawsuit: (1) they are oppressed minority shareholders entitled to relief under the provisions of N.J.S.A. 14A:12-7(c); and (2) Defendants

---

[1]FBC was the product of a 1999 merger between two of the Founder's corporate entities. That merger and the names of entities are not relevant to the summary judgment motion pending before this Court.  This Opinion, therefore, refers only to FBC and does not identify the individual corporations that existed prior to 1999.

Kanter and Peter Visceglia breached their fiduciary duties as co-executors of Plaintiffs' mother's estate and trustees of the testamentary trusts Plaintiffs' mother left for them.

Plaintiffs allege that Defendant Peter Visceglia misappropriated the Founder's remaining FBC stock in 1998 by "stealing" it and distributing most of it to his co-Defendants.  (Plaintiffs' Brief at 13-14.)  Further, they argue that Defendants bear the burden of persuading this Court that the 1998 transfer was valid.  (Id. at 14.)  Nonetheless, Plaintiffs frankly admit that they are not seeking to recover the Founder's stock either for themselves or for the Founder's estate and, in any event, the Founder is not a party to this action and Plaintiffs state that are not attempting to assert claims on his behalf.  (Id. at 16.)  Plaintiffs advise that they raised the transfer issue "only to show that defendants misappropriated the stock from [the Founder] as part of their overall scheme to oppress plaintiffs and keep them from obtaining that stock through [the Founder's] intended estate plan."[2]  (Id.)  Thus, these allegations are relevant, if at all, only to Plaintiffs' statutory claim under the New Jersey Business Corporation Act, N.J.S.A. 14:1-2.1 et seq.

Plaintiffs claim to be oppressed minority shareholders because Defendants allegedly: (1) redeemed Plaintiffs' shares of FBC at "unlawfully low prices"; (2) caused a reduction of the number of FBC shares through redemption of shares in their mother's estate in an attempt to dilute Plaintiffs' shareholder interest in future profits of FBC; (3) conceived a long-term plan to

---

[2]The Court notes that the alleged misappropriation is not relevant to Plaintiffs' breach of fiduciary duty claims because those claims are confined to the allegations that Defendants Kanter and Peter Visceglia breached duties as co-executors of Plaintiffs' mother's estate and as trustees of testamentary trusts established by Plaintiffs' mother.  The allegation that Defendant Peter Visceglia misappropriated FBC stock from his own father and improperly distributed it to himself and the individual co-Defendants, does not allege a breach of his fiduciary duties to Plaintiffs as the co-executor of his sister's estate or as a trustee of testamentary trusts she established.

squeeze Plaintiffs' family out of the business and deny them employment opportunities; and (4) adopted an unfair and "punitive" stock valuation methodology that undervalued Plaintiffs' shares and allowed Defendants to purchase shares of FBC at an unfairly low price.  (Amended Complaint at ¶¶ 117-121.)

With respect to their breach of fiduciary duty claims, Plaintiffs allege that co-Defendants Kanter and Peter Visceglia, as co-trustees of the testamentary trusts of Plaintiffs, and as co-executors of Plaintiffs' mother's estate, breached their duties of full disclosure, absolute loyalty, utmost honesty, and complete candor.  Plaintiffs contend that these Defendants had the fiduciary duty to "maximize the value of the Estate and trust assets for the benefit of the beneficiaries." (Amended Complaint at ¶104.)  According to Plaintiffs, these Defendants also breached their fiduciary duty to vote the stock of the trusts solely for Plaintiffs' benefit (as trust beneficiaries) and not for Defendants' own benefit (as trustees who may have conflicting interests because they are individual owners of FBC stock).  (Amended Complaint at ¶ 105.)  Further, Plaintiffs claim that these Defendants had the fiduciary duty "not to take actions for their own benefit or the benefit of others that may conflict with the interests of the beneficiaries."  (Amended Complaint at ¶ 106.)  In this regard, Plaintiffs allege that Defendants Kanter's and Peter Visceglia's personal ownership of a substantial number of voting and non-voting shares of FBC stock created "significant and obvious conflicts" between Plaintiffs' interests and these Defendants' personal interests.  (Amended Complaint at ¶ 107.)

<u>ANALYSIS</u>

**I.      Summary Judgment Standard**

Summary judgment is appropriate under F<small>ED</small>. R. C<small>IV</small>. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325. Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. <u>Jersey Cent. Power & Light Co. v. Lacey Township</u>, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. <u>Anderson</u>, 477 U.S. at 248; <u>Siegel Transfer, Inc. v. Carrier Express, Inc.</u>, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."

Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P.

56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue

for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided

sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc.,

243 F.3d 130, 138 (3d Cir. 2001).

       If the nonmoving party has failed "to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof

at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex,

477 U.S. at 322-23).

## II.      Claims Regarding Oppression of Minority Shareholders

       Defendants argue that they are entitled to summary judgment on Plaintiffs' claims under

the New Jersey Business Corporation Act, N.J.S.A. 14A:1-2.1, et seq.  The Act, inter alia,

provides equitable relief for minority shareholders who have been oppressed under the terms of

the Act.  This provision, however, only applies to corporations with twenty-five or fewer

shareholders.  N.J.S.A. 14A:12-7(1)(c).  Defendants argue that the statute is inapplicable here

because FBC's stock register discloses the existence of thirty-four shareholders of record.  They

rely on the provisions of N.J.S.A. 14A:1-2.1(1), which defines a "shareholder" as "one who is a

holder of record of shares in a corporation."

Plaintiffs counter with the argument that FBC has only nineteen shareholders because "only 19 actual people" own the FBC shares directly or are the sole beneficiaries of trusts holding the FBC shares.  (Plaintiffs' Opposition Brief at 5.)  In other words, Plaintiffs argue that only the nineteen beneficial owners should be counted for purposes of determining whether the minority shareholder oppression provision of the Business Corporation Act is applicable.  Under Plaintiffs' theory, each trust that owns shares for the three individual Plaintiffs should not be treated as a separate and distinct shareholder.  (Id.) According to Plaintiffs, beneficial owners should be included in the definition of "shareholder" for a number of reasons: (1) the IRS' treatment of FBC for federal tax purposes recognizes the beneficial owners (Plaintiffs' Opposition Brief at 6); (2) the parties' conduct demonstrate that there are only nineteen shareholders (Id. at 8); (3) legislative intent would be thwarted if close corporations could bypass the Act by simply creating enough shareholder trusts to increase the total number of shareholders to more than twenty-five (Id. at 6-7); (4) the statute is to be liberally construed to protect minority shareholders of close corporations (Id. at 5, 7); and (5) the 1968 Commissioner's Comment to the New Jersey Act states that its definition of "shareholder" is "identical" to the definition provided in the Model Business Corporation Act after which it was modeled (Id. at 7).

The Court rejects Plaintiffs' arguments and finds that Defendants are entitled to judgment on this statutory claim as a matter of law.  First, even if the "IRS deems the beneficiary as the shareholder of record" for federal income tax purposes as Plaintiffs contend, that fact has no bearing on the construction of New Jersey's Business Corporation Act and whether the oppressed minority shareholder provision counts only beneficial owners when such recognition serves to reduce the number of shareholders to fewer than twenty-five.  E.g., Wilson v. Daily News of the

7

Virgin Islands, 881 F.2d 82, 87 (3d Cir. 1989) (stating rule that if statutory language is unambiguous, plain meaning of statute's terms will be given effect, despite even statute's own legislative history).

Second, it is equally irrelevant that FBC may have historically "treated the beneficiaries as owners of record" by directing correspondence to the beneficiaries and not to the trustees. FBC's conduct in directing correspondence to the beneficial owners of FBC stock simply cannot alter (or serve as evidence of) the proper construction of the oppressed minority shareholder provision of the New Jersey Business Corporation Act.  Put simply, parties cannot alter statutory provisions by their conduct.  See Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 443 (3d Cir. 2006) (reciting rule that parties cannot change existing statutory law by contract).

Third, while Plaintiffs may be correct that the legislative intent behind the oppressed minority shareholder statute could be frustrated by a close corporation's decision to create additional shareholders by simply forming enough trusts, that argument is not persuasive to this Court.  The legislature, rather than this Court, should act to amend or revise N.J.S.A. 14A:12-7 if the statute does not afford the type of relief or safeguards the legislature intended.  See BA Properties, Inc. v. Gov't of Virgin Islands, 299 F.3d 207, 220 (3d Cir. 2002) (recognizing that statutory construction may be contrary to intent of legislature and encouraging legislature to amend statute to clarify or modify scope of statute if necessary).  Where a statute is plain and unambiguous, the Court will construe it according to its terms; the legislature, not the Court, is empowered to amend the statute.  In any event, there is no evidence whatsoever in the case at bar that FBC intentionally manipulated the number of its shareholders in an attempt to avoid the

8

application of N.J.S.A. 14A:12-7.  To the contrary, it appears uncontroverted that the shareholder

trusts were created at different times by different grantors and utilized different trust agreements

with different terms and different trustees.

Fourth, liberal construction of a statute does not require – or even permit – this Court to

fundamentally alter the plain and unambiguous terms of the statute. Dutton v. Wolpoff and

Abramson, 5 F.3d 649, 654 (3d Cir. 1993) (applying rule that plain language of remedial statute

controls unless literal application would produce absurd result or result plainly contrary to policy

of legislation as a whole).  Plaintiffs argue that the Act's definition of "shareholder" must be

construed to provide relief for minority shareholders of close corporations.  (Plaintiffs'

Opposition Brief at 5.)  The plain and eloquent fact, however, is that the New Jersey legislature

did not see fit to define the term "shareholder" in a matter that makes FBC a close corporation

for purposes of the oppressed minority shareholder provision of the statute.

Fifth, the fact that the Commissioner's Comment to the New Jersey Business Corporation

Act observed that the definitions of "shareholder" were identical in the state statute and the

Model Act back in 1968 has no bearing on whether those definitions diverge almost forty years

later.  Indeed, at least by 1984, the Revised Model Act's definition of "shareholder" included

beneficial owners.  REVISED MODEL BUS. CORP. ACT §§ 1.40(22), 7.40(e), and 13.01(7) (Spring

1984).  To this day, the New Jersey legislature has not amended New Jersey's Business

Corporation Act  to include the concept of beneficial ownership in the Act's definition of

"shareholder."  This is strong evidence that the terms of the New Jersey statute and the Revised

Model Act are substantively different with respect to whether the term "shareholder"

encompasses beneficial owners.  "Deviation from the language of a uniform or model act is

9

presumed to be deliberate." NORMAN J. SINGER, 2B SUTHERLAND STATUTORY CONSTRUCTION §

52:5 (6th ed. 2005).  This is because "when the legislature models a statue after a uniform act, but

does not adopt the particular language, the court concludes that the omission was intentional."

Id.  Shannon v. United States, 512 U.S. 573, 581 (1992) (recognizing and giving effect to

distinctions between federal statute and District of Columbia Code upon which it was based).

      In short, the New Jersey Business Corporation Act defines "shareholder" as "one who is a

holder of record of shares in a corporation." N.J.S.A. 14A:1-2.1(1).  The Court finds this

provision to be plain and unambiguous.  Moreover, this definition comports with the general

understanding of the term "shareholder" as used in corporation law.  "In general, the legal owner,

rather than the beneficial owner, is considered the 'stockholder' or 'shareholder.'" Bache & Co.

v. General Instrument Corp., 74 N.J.Super. 92, 98, 180 A.2d 535 (1962), certif. denied, 38 N.J.

181, 183 A.2d 87 (1962).  The Bache court further observed:

> [A] shareholder is a person listed on the corporation books as the
> owner of shares in that corporation.  Although ownership of shares
> may be transferred by endorsement of the certificate, the
> corporation may always recognize the exclusive right of the
> registered owner to vote as the owner of the shares.
>
>         *   *   *
>
> In this case. . .we find nothing in our General Corporation Act to
> support the idea that an unregistered beneficial owner of stock is
> intended to have the status of a stockholder in intracorporate
> affairs.

Id. 98, 99 (internal citations and punctuation omitted).  The Bache court, citing Salt Dome Oil

Corp. v. Schenck, 41 A.2d 583, 588 (Del. Sup. Ct. 1945), noted that affording only registered

owners – and not beneficial owners – the status of stockholders serves important corporate

purposes, including providing "order and certainty, and a sure source of information, so that the corporation may know who its members are and with whom it must treat. . . ."  Bache, 74 N.J. Super. at 99.

The New Jersey Supreme Court has not ruled on this issue, so this Court does not have its direction regarding whether the term "shareholder" as used in New Jersey's Business Corporation Act includes beneficial owners or only registered owners.  In the absence of such direction, the well-reasoned dicta from the distinguished panel of the New Jersey Appellate Division in Bache is of substantial assistance.  This Court is cognizant that two trial level courts in New Jersey appear to have decided this issue differently, either by distinguishing Bache[3] or by disregarding Bache's discussion of the issue as dicta.[4]  Those cases, however, are simply not persuasive to this Court in light of the Appellate Division's holding in Bache and the plain and unambiguous terms of the statute.  A leading authority on the issue, 11 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5085 (2007), also supports the Court's determination.  There, the author notes the distinction between states that follow the Model Business Corporation Act's definition of "shareholder" as holders of record and those that follow the Revised Model Business Corporation Act's definition, which includes beneficial owners.  New Jersey is one of the jurisdictions that follows the Model Business Corporation Act. This Court, therefore, predicts that the New Jersey Supreme Court would follow Bache and recognize only holders of record as shareholders for purposes of the oppressed minority shareholder provision of the New Jersey Corporation Act.

---

[3]Berger v. Berger, 249 N.J. Super. 305, 592 A.2d 321 (Ch. Div. 1991)

[4]Bohrer v. United States Lines Co., 92 N.J. Super. 592, 224 A.2d 348 (Law Div. 1966)

Thus, Defendants are entitled to summary judgment on Plaintiffs' statutory claims asserted under the New Jersey Business Corporation Act.  Specifically, as outlined in Plaintiffs' Opposition Brief, the alleged acts of minority shareholder oppression for which Defendants are entitled to summary judgment are: (1) misappropriation of the Founder's FBC stock[5]; (2) misappropriation of stock from Plaintiffs' mother's estate; (3) employment of an improper and "punitive" valuation method; (4) manipulation of dividends; (5) attempting to coerce Plaintiffs to sign an "unfair and prejudicial" shareholders' agreement; (6) interference with Plaintiffs' efforts to market their stock; and (7) attempting to marginalize Plaintiffs by "turning" Plaintiffs' brother "against them."  (See generally Plaintiffs' Opposition Brief at 13-33.)

## III.  Breach of Fiduciary Duty Claims

Plaintiffs claim that Defendants Kanter and Peter Visceglia breached fiduciary duties in their capacities as trustees of their mother's testamentary trusts and as executors of Plaintiffs' mother's estate.  Plaintiffs claim that Defendants Kanter and Peter Visceglia breached their fiduciary duties by improperly undervaluing the shares of stock redeemed by FBC to satisfy the estate taxes.[6]  (Plaintiffs' Opposition Brief at 43-44.)  They claim that they should have been

---

[5]Plaintiffs are not seeking relief for this alleged misappropriation.  They have alleged, however, that the transfer issue is illustrative of Defendants' "overall scheme to oppress plaintiffs and keep them from obtaining that stock. . . ."  (Plaintiffs' Opposition Brief at 16.)

[6]Plaintiffs attempt to state breach of fiduciary duty claims for Defendants' alleged misconduct in withholding material information regarding how Plaintiffs should have paid the 2003 and 2004 estate taxes.  (See generally Plaintiffs' Response to SOFs 53, 88, 92 and Plaintiffs' SOFs 178, 179.)  The uncontroverted evidence, however, is that Plaintiff Michael Sery joined the Board and began attending FBC board meetings almost two years prior to 2003.  (Plaintiffs' Response to SOF 53.)  Likewise, although Plaintiffs claim to have been ignorant of FBC's decision to repay the loan balances, they do not dispute that after the FBC board decided

offered a choice among several valuation methodologies.  (Id.)

-----------------

to repay the loans, it "executed promissory notes for each of the outstanding loan balances, and from 2000 through 2002, provided monthly and quarterly statements to all loan account holders [including Plaintiffs] regarding the loan activity and tax implications."  (Defendants' SOF 56 and Plaintiffs' Response thereto.)  Furthermore, by Plaintiffs' own admission, Plaintiffs knew that FBC planned to repay shareholder loans in the "near-term" before the second and third installments of the estate taxes were due.  (Id.)  In this Circuit, it is well recognized that "unsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

Plaintiffs also attempt to state a breach of fiduciary duty claim based upon allegations that Defendants Kanter and Peter Visceglia had, and breached, the duty to "completely submerge their own personal shareholder interests and those required of a corporate director and chief executive officer. . . ."  (Plaintiffs' Opposition Brief at 35.)  This claim, too, fails as a matter of law.  Plaintiffs' position, if accepted, would turn the law of trusts on its head.  As trustees, Defendants Kanter and Peter Visceglia were required to exercise independent judgment for the benefit of the beneficiaries and to vote the trust shares accordingly.  E.g., In re Koertzky's Estate, 8 N.J. 506, 526, 86 A.2d 238 (1951).  This does not mean that the trustees became the alter egos of the beneficiaries or that Defendants Kanter and Peter Visceglia, as trustees, were required to acquiesce to Plaintiffs' individual demands.  To the contrary, New Jersey law recognizes that trustees may have properly discharged their duties even where the trust beneficiaries take issue with their decisions.  See id. at 530-31 (recognizing that trusts are created to protect beneficiaries from their own actions as well as from the conduct of others and that a beneficiary's disagreement with a trustee's exercise of discretion – or resentment of the trustee's authority – is not paramount to a finding that the trustee has breached fiduciary duties).

In this respect, Defendants' reliance upon Rosencrans v. Fry, 21 N.J. Super. 289, 91 A.2d 162  (N.J. Sup. Ct. Ch. Div. 1952), aff'd, 12 N.J. 88, 95 A.2d 905 (1953) is well placed.  While fiduciaries have a duty to promote the interests of the  beneficiaries in voting shares of stock, this:

> does not embrace a duty to advance the interest of a beneficiary at the expense of the corporation and other outstanding stockholders' interests.  That duty must be adjusted with the duty of a director as such.  And where, as here, better than 50% of the shares are held by others, and the policy of the board is unassailable from the standpoint of the company's interests, and indeed the beneficiary approved and voted for the course pursued, [the trustee/director] cannot be said to have been remiss in his duty as a co-trustee.

21 N.J. Super. at 301.

This Court finds that Defendants are entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim arising from the stock valuation method employed on three independent bases.  First,  Plaintiffs simply have not produced any evidence, beyond their own bald allegations, that the valuation methodology was actually improper; they have only asserted that they do not agree with it.  See Advo, Inc. v. Philadelphia Newspapers, Inc., 51 F.3d 1191, 1197 (3d Cir. 1995) (requiring more than a 'scintilla of factual support' for legal theory of case in order to withstand summary judgment).  The methodology used to determine the redemption price was reasonable as a matter of law, because it was used historically and accepted by the Internal Revenue Service ("IRS").  Indeed, as Defendants point out, it would have been impermissible for the executors to utilize one value for the IRS and then set a different value for the stock being redeemed.  (Defendants' Brief at 20.)  As Plaintiffs' own counsel testified, it was simply not "possible to agree to a first redemption price, disclose that to the IRS and then somehow change the redemption price" because "it is [not] permissible to mislead the IRS as to the value of the redemption."  (Stein Depo. At 136:21 - 137:6.)

Second, Plaintiffs have not been damaged by the valuation method as a matter of law.  The same number of shares would have had to be redeemed to satisfy the estate tax obligation irrespective of the value assigned to that stock and there is no evidence that the potential sales price for the shares Plaintiffs received from their mother's estate was negatively impacted by the valuation methodology employed for redemption. Id.[7]

_____

[7]In short, Defendants correctly indicate that the valuation method used to value the stock for redemption purposes would necessarily have been used for tax purposes.  (Defendants' Brief at 20.)  Thus, if, as Plaintiffs contend, the stock they redeemed should have been given a higher value, then retained stock would likewise be worth more, resulting in higher taxes.  "In other words, no matter what higher price would have been assigned to the FBC stock, it would have

Finally, Defendants are also entitled to summary judgment because even Plaintiffs admit
that their December 2006 purchase of the shares at the redemption price mitigated any damages
they would otherwise claim to have suffered.  DeGregorio v. American Bd. of Internal Medicine,
844 F.Supp. 186, 188 (D.N.J. 1994) (recognizing that breach of fiduciary duty is a tort under
New Jersey law and granting summary judgment because no damages were alleged).

The breach of fiduciary duty claim is now moot because it is uncontroverted that
Plaintiffs have not suffered any damages arising out of the valuation.  (Defendants' Brief at 18-
19, n. 13.)  It is undisputed that FBC offered Plaintiffs the chance to purchase 75% of the shares
redeemed to pay estate taxes at the same price FBC paid for them. (Only three of the estate's four
heirs criticized the redemption and are Plaintiffs in this lawsuit; thus FBC offered Plaintiffs the
ability to purchase 75% of the stock it redeemed.)  (Defendants' SOF 109-111 and Plaintiffs'
Response thereto.)  It is also uncontroverted that Plaintiffs took advantage of this offer and did,
in fact, repurchase the redeemed shares in December 2006.  Plaintiffs even admit that their
repurchase of the FBC shares formerly held by their mother's estate "mitigated liability for a
significant portion of the plaintiffs' claims for breach [of fiduciary duty] against Peter Visceglia
and Christine Kanter as the executors of their mother's estate and as trustees for their
testamentary trusts."  (Plaintiffs' Response to SOF 109 at p. 46.)

Now, Plaintiffs contend that FBC's offer to sell Plaintiffs the redeemed stock at the price
FBC paid for it constitutes an admission by Defendants Kanter and Peter Visceglia that they
breached their fiduciary duties. (Plaintiffs' Opposition Brief at 33-34.)  The Court rejects this

cost the same number of shares to pay the taxes and the same number of shares would have been
left over to be distributed to the heirs."  (Defendants' Brief at 19.)

assertion because it lacks legal support.  The primary authority upon which Plaintiffs rely is a

1957 California state appellate opinion that is neither directly on point nor persuasive to this

Court.  Moreover, even the terms of FBC's offer belie Plaintiffs' claim.  As Plaintiffs

acknowledge, the company offered to sell the stock to them for the "same allegedly low price" at

which FBC redeemed the shares. Although a party may make an admission against interest by its

conduct, FBC's sale of stock to Plaintiffs at the redemption price simply does not constitute such

an admission as a matter of law.  Pursuant to FED. R. EVID. 804(b)(3), in order to constitute an

admission against interest, a party's statement must be "so far contrary" to its "pecuniary or

proprietary interest" that "a reasonable person . . .would not have made the statement unless

believing it to be true."  Here, there is simply no evidence that FBC's sale of the stock subjected

FBC to civil liability or was so far against its pecuniary or proprietary interest such that a

reasonable person would not have undertaken it but for its knowledge that the conduct was

wrongful.  Defendants Kanter and Peter Visceglia are entitled to summary judgment on

Plaintiffs' breach of fiduciary duty claims.


**IV.     Defendants' Request for Attorneys' Fees**

This Court has discretion to award reasonable expenses, including attorneys' fees, if it

determines that any party to this action "acted arbitrarily, vexatiously, or otherwise not in good

faith. . . ."  N.J.S.A. 14A:12-7(10).  Defendants argue that they are entitled to costs and attorneys'

fees under this provision because Plaintiffs' lawsuit has no legally-cognizable foundation and is

driven solely by Plaintiffs' desire to separate themselves from FBC or to extract money from the

company, regardless of any adverse impact on FBC's long-term health.  (Defendants' Brief at

64.)  Although this Court has determined that Defendants are entitled to summary judgment and

Plaintiffs' claims fail as a matter of law, the Court does not find that Plaintiffs brought their

claims in bad faith or that asserting these claims constituted vexatious or arbitrary conduct.  As

such, Defendants' request for costs and attorneys' fees will be denied.


## CONCLUSION

For the reasons stated above, this Court grants Defendants' motion for summary

judgment in its entirety and denies Defendants' motion for reasonable expenses and attorneys'

fees.

    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: April 15, 2008