## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL SERY, MATTHEW SERY and DAVID SERY, | : : : | |
| Plaintiffs, | : : | Civil Action No.  06-1026(SRC) |
| ·v | : : | **OPINION** |
| FEDERAL BUSINESS CENTERS, INC., PETER C. VISCEGLIA, CHRISTINE KANTER, and FRANK D. VISCEGLIA, JR., | : : : : : | |
| Defendants. | : | |

**<u>CHESLER, U.S.D.J.</u>**

This matter comes before the Court on the motion filed by Plaintiffs/Counterclaim Defendants Michael, Matthew and David Sery (hereinafter referred to as "Plaintiffs") for summary judgment on the seven (7) counterclaims of Defendants/Counterclaim Plaintiffs Federal Business Centers, Inc. ("FBC"), Peter C. Visceglia, Christine Kanter and Frank D. Visceglia (hereinafter referred to as "Defendants") [Docket Entry No. 186].  Plaintiffs assert that they are entitled to summary judgment on Defendants' counterclaim that the Serys breached fiduciary duties owed to Federal Business Centers, Inc. and to their fellow FBC shareholders (Counterclaim I); on Defendants' counterclaim that the Serys, by marketing and imminently transferring their FBC shares, are in breach of their contractual obligations to preserve FBC's Subchapter S status (Counterclaim II); on Defendants' counterclaims that Plaintiffs are liable to

-1-

Defendants for contribution and indemnification (Counterclaims III, IV); on Defendants'

counterclaim that Michael Sery misrepresented the views of his family members to the FBC

Board of Directors (Counterclaim V); on Defendants' counterclaim for tortious interference

based on Plaintiffs' alleged marketing of the entire FBC real estate portfolio (Counterclaim VI);

and on Defendants' counterclaim that Plaintiffs breached confidentiality agreements by, <u>inter</u>

<u>alia</u>, disclosing confidential information about FBC to entities who either were not interested in

purchasing the FBC shares or were sharing the confidential information with third parties

(Counterclaim VII).  For the reasons set forth below, Plaintiffs' motion for summary judgment

will be **GRANTED** as to Counterclaims II, V, VI and VII.  The Court **DENIES** Plaintiffs'

motion for summary judgment on Counterclaims I, III and IV.  Those counterclaims are

**DISMISSED** without prejudice.

I.      **FACTUAL BACKGROUND**

        This action involves various counterclaims arising out of efforts by Plaintiffs Michael

Sery, Matthew Sery and David Sery to sell or transfer their shares in FBC.  FBC is a closely held

Subchapter S corporation of which Plaintiffs and Defendants Peter C. Visceglia, Christine Kanter

and Frank D. Visceglia, Jr. (the "Individual Defendants") are shareholders.  In 1997, each

individual FBC shareholder consented to FBC's election to be treated as a Subchapter S

corporation under the Internal Revenue Code.  In consenting to Subchapter S election, the Serys

executed Internal Revenue Form 2553, which states that the consent to Subchapter S election is

"binding and may not be withdrawn after the corporation has made a valid election."  In addition,

the Serys executed a Qualified Subchapter S Trust Election pursuant to Section 1361(d)(2) of the

Internal Revenue Code in which they consented to election and attested that their various trusts

were qualifying shareholders of S corporations.

Since March 3, 2006, Plaintiffs and Defendants have been involved in litigation based on Plaintiffs' allegations that Defendants have engaged in shareholder oppression and breached fiduciary duties.  The Court recently granted summary judgment in favor of Defendants' on these allegations.  Plaintiffs have confirmed their plans to appeal the Court's decision.  In order to finance the ongoing litigation, Plaintiffs claim that they have borrowed money from Vail Associates, LLC and have pledged a portion of their FBC shares as collateral for the repayment of the loan.  (Plaintiffs' SUF ¶¶ 20-22.)  Plaintiffs assert that they will soon default on their loan obligation and be required to transfer a portion of their FBC shares to Vail Associates in order to satisfy their obligation.  (Id.)  It is uncontroverted that FBC will lose its Subchapter S status if any shareholder sells stock in FBC to an entity that is not qualified to hold stock in a Subchapter S corporation.  See 26 U.S.C. § 1362(d)(2).  Plaintiffs claim that the anticipated transfer of their FBC shares to Vail Associates will cause FBC's Subchapter S status to terminate.  (Plaintiffs' Brief at 2.)

Defendants have filed their counterclaims seeking a determination of the Plaintiffs' rights and duties based on the Subchapter S election to which Plaintiffs consented.  According to Defendants, Plaintiffs have actively marketed their FBC shares and threatened to transfer their shares to an unqualified entity in order to coerce Defendants into buying out Plaintiffs of their FBC stock.  (Defendants' Opposition Brief at 5.)  Defendants maintain that, on December 21, 2006, the Serys informed them that Plaintiffs planned to "go nuclear" in their dispute with Defendants on December 26, 2006.  (Defendants' Opposition Brief at 6.)  Specifically, Plaintiffs allegedly threatened to enter into an agreement to sell FBC stock to an unqualified entity, thereby

causing the loss of FBC's Subchapter S status.  (Id.)  Based on this alleged threat, Defendants

filed the instant counterclaims on December 26, 2006.  Among other things, Defendants claim

that Plaintiffs are barred by their fiduciary duties and by contractual obligations from selling or

transferring their FBC shares in a manner that will cause the loss of FBC's Subchapter S status.

(Answer ¶¶ 42-56.)  Plaintiffs respond that common law fiduciary duties do not apply to the

proposed transfer of their FBC shares and assert that they are under no contractual obligation to

preserve FBC's Subchapter S status because no such contract exists.  (Plaintiffs Brief at 1.)  To

date, Plaintiffs have not transferred their FBC shares to Vail Associates or any other entity.

        In addition to filing counterclaims for breach of fiduciary duty and breach of contract

based on Plaintiffs' anticipated transfer of FBC stock to an unqualified entity, Defendants also

counterclaim for indemnity and contribution in the event that Plaintiffs prevail on their

shareholder oppression claims.  Based on this Court's prior grant of summary judgment in favor

of Defendants on the shareholder oppression claims, both parties agree that the contribution and

indemnification counterclaims are moot.  Defendants additionally counterclaim alleging that

Plaintiff Michael Sery, as a member of the FBC Board of Directors, misrepresented the views of

his family to fellow members of the FBC Board.  At oral argument, Defendants conceded that

they are no longer pursuing their misrepresentation counterclaim.

        Finally, Defendants have filed counterclaims based on Plaintiffs marketing of their FBC

stock to potential buyers.  According to Defendants, Plaintiffs have tortiously interfered "with

FBC's relationships with its tenants, prospective tenants, real estate brokers, employees and

commercial lenders by purporting to market FBC's entire real estate portfolio."  (Answer ¶ 69.)

Moreover, Defendants allege that Plaintiffs have breached confidentiality agreements by

disclosing FBC's confidential and proprietary information to third parties with knowledge that these parties had no intention of considering the purchase of FBC stock.  (Answer ¶ 78.)

Plaintiffs dispute the allegations related to the marketing of their FBC stock.  They maintain that they have never marketed the entire FBC real estate portfolio.  (Plaintiffs SUF ¶ 18.)  Plaintiffs do acknowledge that they received a third party offer for the purchase of FBC's portfolio, but insist that the offer was unsolicited.  (Plaintiffs' Brief at 30-31.)  With regard to Defendants' counterclaim for breach of confidentiality agreements, Plaintiffs respond that Defendants have failed to offer any admissible evidence on the essential elements of their counterclaim.  Specifically, they contend that Defendants have not introduced any evidence tending to show "that the offer received from a third party for FBC's assets is confidential information, that this third party offer was based on non-public information, that the [P]laintiffs had an obligation to keep this third party offer confidential, or that there is any admissible evidence that FBC suffered any damage as a result..."  (Id. at 3.)

Defendants have sought to dismiss their counterclaims without prejudice under Fed. R. Civ. P. 41(a), contending that the claims are not ripe.  Alternatively, Defendants oppose the summary judgment motion on the merits.

## II.    DISCUSSION

### A.    <u>Summary Judgment Standard of Review</u>

Summary judgment is appropriate under Fed R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for

the non-movant, and it is material if, under the substantive law, it would affect the outcome of

the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion

for summary judgment, a district court may not make credibility determinations or engage in any

weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all

justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241,

247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

     "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . .

the burden on the moving party may be discharged by 'showing' – that is, pointing out to the

district court – that there is an absence of evidence to support the nonmoving party's case."

Celotex, 477 U.S. at 325.  Once the moving party has satisfied its initial burden, the party

opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent.

Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing

the motion for summary judgment cannot rest on mere allegations and instead must present

actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at

248;  Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).

"[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."

Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990);  see also Fed. R. Civ. P.

56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue

for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided

sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc.,

243 F.3d 130, 138 (3d Cir. 2001).

     If the nonmoving party has failed "to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

### B. Breach of Fiduciary Duty

#### 1. Introduction

Defendants have filed a counterclaim for a declaration that Plaintiffs' possible sale of their FBC stock, which would result in the loss of corporate Subchapter S status, is a breach of fiduciary duty. Defendants contend that Plaintiffs have a fiduciary duty to FBC and their fellow FBC shareholders to refrain from taking any action to destroy the close corporation's Subchapter S status (Counterclaim I). Plaintiffs have put Defendants on notice that they may transfer their FBC shares to Vail Associates in the very near future, thereby causing the loss of FBC's Subchapter S status. Defendants contend that such a transfer would breach the fiduciary duties owed to FBC and FBC's shareholders.

In addition to opposing Plaintiffs' motion for summary judgment on substantive grounds, Defendants request, as an initial matter, that the Court not reach the merits of any of their counterclaims, contending that dismissal without prejudice is warranted based on (1) the Court's discretion pursuant to Fed. R. Civ. P. 41(a)(2) or, in the alternative, (2) the argument that the counterclaims are not ripe for adjudication. (Defendants' Opposition Brief at 8-14.) As will be discussed below, the Court exercises its discretion under 28 U.S.C. §§ 2201 in refusing to grant

declaratory relief and dismisses this counterclaim as unripe.[1]

## 2. New Jersey Law of Fiduciary Duty

There is significant disagreement between both sides concerning the fiduciary duties allegedly owed by the Plaintiffs to the corporation and to their fellow shareholders under New Jersey law. Plaintiffs rightly point out that, in New Jersey, restrictions on the transferability of corporate stock are governed by the New Jersey Business Corporations Act ("NJBCA"). N.J.S.A. §14A:7-12. (Plaintiff's Brief at 6-7, 15-16.) Since, in the Plaintiff's view, no restrictions have been placed on the transfer of the FBC stock pursuant to the provisions of NJBCA, the absence of such restrictions gives Plaintiffs the unfettered ability to sell their FBC shares in the manner of their choosing. (Id. at 15) Plaintiffs diligently cite two cases from sister jurisdictions in which courts have concluded that shareholders who sell their stock in a manner that destroys Subchapter S status do not violate any duty to the corporation or to their fellow shareholders. (Id. at 21 (citing Merner v. Merner, 129 Fed. Appx. 342, 343-44 (9th Cir. 2005); Hunt v. Data Management Resources, Inc., 985 P.2d 730, 732-33 (Kan. App. 1999)).) However, neither case is on point. In Merner, the Ninth Circuit found that California common law does not impose enhanced fiduciary duties on minority shareholders in a close corporation. 129 Fed. Appx. at 343. And in Hunt, the court explicitly noted that the corporation whose Subchapter S status was at issue was not a close corporation. 985 P.2d at 732. Based on this finding, the court

---

[1] Defendants' counterclaim begs the Court to exercise its discretion to issue a declaration regarding the fiduciary duties owed by Plaintiffs. The Court recognizes that it has broad discretionary power under the Declaratory Judgment Act. The U.S. Supreme Court has made clear that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Wilton v. Seven Falls Company, 515 U.S. 277, 288 (1995). The Court chooses not to grant declaratory relief here given the evanescent nature of the record and the lack of concrete facts upon which the Court would base a decision.

ruled that no fiduciary duties would be imposed on the corporate shareholders.  Id. at 732-733.

In contrast to Ninth Circuit's determination of California common law in Merner, the New Jersey Supreme Court has not determined whether minority shareholders in a close corporation owe enhanced fiduciary duties.  However, in Balsamides v. Perle, a New Jersey Appellate Division panel concluded that the New Jersey common law imposes enhanced fiduciary duties upon all shareholders in a close corporation. 313 N.J. Super 7 (App. Div. 1998), aff'd in part, reversed in part on other grounds, 160 N.J. 352 (1999).  The Balsamides court found that "stockholders in a close corporation owe each other substantially the same fiduciary duty of good faith and loyalty as that owed by partners in a partnership." Id. at 15.

Applying the holding from Balsamides, Defendants conclude that the Plaintiffs' common law duties of loyalty and good faith bar Plaintiffs from destroying FBC's Subchapter S status by selling or transferring their FBC shares to an unqualified entity.  (Defendants' Opposition Brief at 15-16.)  In support of this proposition, Defendants cite extensively to the First Circuit's decision in A.W. Chesterton Co. v. Chesterton, 128 F.3d 1 (1st Cir. 1997).  (Defendants' Opposition Brief at 18-21.)  In Chesterton, the Court of Appeals found that a minority shareholder in a closed corporation breached duties owed to his fellow shareholders by transferring his shares in a S corporation to a shell corporation that was set up for the purpose of triggering the loss of the S corporation's Subchapter S status.  128 F.3d at 6.  The First Circuit went as far as to find that evidence of a bona fide business purpose for the transfer was an insufficient defense to a breach of fiduciary duty claim.  Id. at 7-8.

In response, Plaintiffs assert that the provisions of the NJBCA which explicitly address restrictions on the transferability of corporate stock completely abrogate any common law

fiduciary duties that would arguably restrict Plaintiffs' ability to transfer their FBC shares. (Plaintiffs' Reply Brief at 5.)  Plaintiffs contend that common law fiduciary duties no longer apply to the sale of S corporation stock because the legislature has passed a law governing restrictions on the transferability of corporate stock and that law explicitly applies to S corporations. (Id. (citing N.J.S.A. §14A:1-12).)  Section 14A:7-12(2) of the NJBCA clearly provides that restrictions on the transfer of shares of a corporation may only be imposed in, inter alia, the certificate of incorporation, the corporate by-laws or a shareholder rights agreement. According to Plaintiffs, since no restrictions were explicitly placed on the Plaintiffs' FBC shares in the manner prescribed by the statute, they should be free to sell or transfer their FBC shares however they choose without being constrained by common law fiduciary duties.  (Plaintiffs' Brief at 18.)

       As the parties are aware, it is the obligation of this Court to apply New Jersey law as established by the State's highest court, where the court has spoken.  Where, as here, the New Jersey Supreme Court has not addressed the issue, this Court is required to predict how that court would rule if presented with an issue.  Here, Defendants would have the Court hold that the duties of good faith and loyalty imposed upon all shareholders of a close corporation would be breached by any sale or transfer of stock that would have the effect of destroying the S corporation's Subchapter S status, regardless of whether the sale was executed in good faith for a reasonable business purpose.  This Court does not predict that the New Jersey Supreme Court would find that New Jersey common law is so broad.  Conversely, the Court is unwilling to accept Plaintiffs' argument that any fiduciary duties that may normally apply are completely abrogated by provisions of the NJBCA.  The Court sees no reason why the common law duties of

good faith and loyalty cannot complement the statutory provisions governing restrictions on the transferability of S corporation stock.  Indeed, the Court is satisfied that the New Jersey Supreme Court would hold that the fiduciary duties of good faith and loyalty restrict the sale or transfer of S corporation stock to the extent that these duties bar a shareholder from entering into a bad faith or sham transaction which destroys the corporation's Subchapter S status for the primary purpose of injuring fellow shareholders.  However, where the shareholder sells or transfers their S corporation shares in good faith in an economically reasonable manner, even if that entails a sale to an unqualified entity, this Court is satisfied that the New Jersey Supreme Court would uphold the sale.

On the record before the Court, there is some dispute as to the propriety of the proposed transfer of FBC stock by the Plaintiffs.  Specifically, there are allegations by Defendants that Plaintiffs, in bad faith, threatened to "go nuclear" and were pursuing a sale that would "creat[e] a massive loss in value and income due to double taxation" and a "much-reduced after-tax cash flow."  (Defendants' Opposition Brief at 5-6.)  Defendants claim that Plaintiffs' threats were made to coerce the Defendants to buy out the Plaintiffs of their FBC stock.  (Id. at 2.)  These allegations alone are enough to raise the specter of bad faith by the Plaintiffs.  Moreover, Defendants point out that the record before the court regarding Plaintiffs' bad faith is "thin" because both the Vail Associates loan transaction and an alleged threat to merge the Sery family's FBC stock into an unqualified entity were only disclosed to Defendants after the completion of discovery.  (Id. at 3.)  Therefore, in the event that the Court refuses to dismiss Defendants' counterclaims without prejudice, Defendants request that the Court grant limited discovery with respect to these transactions.  (Id. at 3-4.)  But since, as will be discussed below,

the Court dismisses Defendants' counterclaim for breach of fiduciary duty without prejudice, no further discovery is necessary at this time.

### 3.  Ripeness of the Breach of Fiduciary Duty Counterclaim

Defendants filed their counterclaims on December 26, 2006, at a time when they believed that Plaintiffs would imminently sell their FBC shares to an unqualified entity, thereby destroying FBC's Subchapter S status.  Since that date, Plaintiffs have continued to market their FBC shares and have recently notified Defendants that they may imminently transfer their FBC shares to Vail Associates in order to satisfy their loan obligation.  Yet, as of this writing, Plaintiffs have not sold or otherwise transferred their FBC shares and the corporation's Subchapter S status remains intact.  Defendants ask the Court to dismiss their breach of fiduciary duty counterclaim on ripeness grounds because the claim begs the Court to presuppose facts based on a hypothetical transfer of FBC shares that has yet to (and may never) occur.  (Id. at 13-14.)  According to Plaintiffs, this counterclaim is ripe and should be decided on the merits because the continued marketing of their FBC shares and the possibility that a transfer is imminent create a real controversy.  (Plaintiffs' Reply Brief at 13.)

This Court is heedful of rendering advisory opinions by adjudicating claims that are not yet ripe.  In deciding whether Defendants' counterclaim for breach of fiduciary duty is ripe, the Court finds Simms v. Exeter Architectural Products, Inc., 868 F. Supp. 677 (M.D. Pa. 1994) instructive.  In Simms, a former president and shareholder of a close corporation sought a declaration of his rights under a non-competition clause contained in the corporation's shareholder agreement.  Id.  According to Plaintiff, the threat of a future lawsuit for breach of the agreement was sufficient to create an actual case or controversy.  Id. at 683.  However, the court

refused to construe the contractual duties owed by the Plaintiff under the clause because there was no allegation that he had yet acted in contravention of the agreement.  Id. at 684.   The court reasoned that issuing a declaratory judgment interpreting the duties owed under the non-competition clause based on nothing more than a hypothetical set of circumstances would constitute unconstitutional advisory opinion writing.  Id. (citing Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 649 (3rd Cir.1990)).  Therefore, the court granted the defendant's motion to dismiss, noting that dismissal "does not preclude a future determination as to the validity of the non-competition clause in the event there evolves an actual controversy or an actual injury is sustained."  Id. at 684-685.[2]

The Court finds that Defendants' counterclaim for breach of fiduciary duty is not ripe for adjudication.  To date, the Serys have not sold or otherwise transferred their FBC shares to a third party.  Without such a transaction having occurred, there is little more for the Court to rely upon than speculation and conjecture regarding how Plaintiffs would allegedly breach their fiduciary duties.  Where, as here, the allegation is that a sale or transfer of stock will breach fiduciary duties, the key facts upon which the court will base its decision must be ascertainable. This type of counterclaim, by its very nature, relies upon a careful analysis of the facts giving rise to the alleged breach.  With only hypothetical facts at the Court's disposal, the Court simply cannot determine whether an actual controversy exists.  If, in the future, the Serys transfer their shares to Vail Associates or any other entity in a manner that causes the loss of Subchapter S

---

[2]  The Court appreciates that the Simms case sought a declaration of the shareholder's duties under a contract whereas this action seeks a declaration of Plaintiffs' duties at common law.  The Court finds Simms instructive because it sees no reason why such a distinction should affect its ripeness analysis.

status, Defendants may bring a breach of fiduciary duty claim.  But given the evanescent nature

of the record before the Court, Defendants' counterclaim for breach of a fiduciary duty is not ripe

and, therefore, it is dismissed without prejudice.

      **C.**      <u>**Breach of Contract**</u>

      As has been noted, Defendants respond to Plaintiffs' motion for summary judgment by

begging the court to dismiss Defendants' counterclaims based on (1) the Court's discretion

pursuant to Fed. R. Civ. P. 41(a)(2) or (2) the ripeness doctrine. (Defendants' Opposition Brief at

8-14).  Voluntary dismissal under Fed. R. Civ. P. 41(a)(2) is a matter entrusted to the discretion

of the district court. <u>Sinclair v. Soniform, Inc.</u>, 935 F.2d 599, 603 (3d Cir. 1991).  A court may

deny voluntary dismissal where the party opposing dismissal can show some plain legal

prejudice. <u>Waterloov Gutter Protection Sys. Co., Inc. v. Absolute Gutter Protection, L.L.C.</u>, 64

F.Supp.2d 398, 409 (D.N.J. 1999).  At this stage of the litigation, the Court finds that Plaintiffs

would plainly be prejudiced by a voluntary dismissal of Defendants' breach of contract

counterclaim.  The Court notes that Defendants' counterclaim has been pending for almost two

years, extensive pretrial discovery has been completed, and the merits of Defendants'

counterclaim are determinable on summary judgment.  <u>See</u> <u>In re Diet Drugs Products Liability</u>

<u>Litigation</u>, 85 Fed. Appx. 845, 847 (3d Cir. 2004) (affirming denial of voluntary dismissal where

counterclaim was pending for two years);  <u>Sporn v. Ocean Colony Condominium Ass'n</u> 173

F.Supp.2d 244, 255 (D.N.J. 2001) (denying voluntary dismissal of case because significant

discovery had been conducted and the legal issues were determinable on the merits).  Therefore,

the court denies Defendants' voluntary dismissal request.

      Additionally, Defendants contend that, like their breach of fiduciary duty counterclaim,

their counterclaim for breach of contract is not ripe because the claim is based on a hypothetical

sale or transfer of FBC stock that has yet to occur.  (Defendants' Opposition Brief at 13-14.)  As

has previously been discussed, the Court agrees that Defendants' counterclaim for breach of

fiduciary duty is not ripe for adjudication.  However, the Court finds that Defendants' breach of

contract counterclaim is ripe.

        In contrast to the Defendants' breach of fiduciary duty claim, which rests upon a

determination of facts surrounding a transaction that has yet to occur, Defendants' breach of

contract claim hinges upon the existence or nonexistence of a contract which allegedly bars

Plaintiffs from selling their FBC shares.  The Court need not engage in hypotheticals or

conjecture in this instance because there is a sufficient record for the Court to ascertain the

existence of an express or an implied contract restricting the transfer of the FBC shares.

Therefore, the breach of contract counterclaim is ripe and will be decided on the merits.

        Plaintiffs assert that they are entitled to summary judgment on Defendants' breach of

contract counterclaim because Defendants base their counterclaim on the flawed notion that the

election of Subchapter S status by Plaintiffs somehow creates a contract prohibiting Plaintiffs

from doing anything to endanger FBC's tax favored status.  (Plaintiffs' Brief at 13-14.)

According to the Plaintiffs, the Serys have never expressly or implicitly bound themselves to

preserve the corporation's Subchapter S status.  Defendants contend that the Serys, by providing

written consent to FBC's election to be treated as a Subchapter S corporation, are contractually

obligated not to act in a manner that would cause FBC to lose its Subchapter S status.  (Answer

¶¶ 51-52.)  Specifically, the Serys executed Internal Revenue Form 2553, which states that the

consent to Subchapter S election is "binding and may not be withdrawn after the corporation has

-15-

made a valid election."  In addition, the Serys executed a Qualified Subchapter S Trust Election

pursuant to Section 1361(d)(2) of the Internal Revenue Code in which they attested that their

various trusts were qualifying shareholders of S corporations.  Defendants claim that the

execution of these documents by the Serys created a contract with Defendants which restricts the

Serys' right to sell or transfer their FBC shares.  (Id.)  Under Defendants' theory, the

consummation of the threatened sale of FBC stock to an unqualified entity would breach these

agreements, thereby harming FBC and FBC's shareholders.  (Answer ¶¶ 52-53.)

In the Court's view, finding that a shareholder is bound forever by the decision to elect

Subchapter S status is a bridge too far and not something that can reasonably be read into the

Subchapter S IRS election forms.[3]  As has been noted, restrictions on the transferability of stock

are governed by the NJBCA.  Again, Section 14A:7-12(2) of the NJBCA clearly provides the

procedure for imposing restrictions on the transfer of Subchapter S shares.  Here, there are no

restrictions in the certificate of incorporation or the corporate by-laws and the FBC shareholders

have never entered into a shareholder rights agreement as required by the statute.  Indeed, the

Court notes that Defendants can point to no written, binding contract that imposes restrictions on

the transfer of the Serys' FBC stock.  Rather, the Defendants would have the court conclude that

contractual restrictions on the transfer of the SBC stock were implicitly created when the Serys

signed the IRS election forms.  The Court believes it strains credulity to assert the existence of

contractual restrictions upon the transfer or sale of the FBC shares based on the mere formality of

_____

[3] Considering the very limited market for minority shares of close corporations, shareholders in closely held S corporations would effectively be held hostage if the Court were to find that Subchapter S election contractually bound a shareholder to preserve the tax favored status.

-16-

executing IRS Subchapter S election forms.

In light of the applicable provisions of the NJBCA, the absence of any case law holding that the IRS election forms create a contractual restriction on the transfer of Subchapter S corporate stock, and the lack of an express provision restricting the transferability of the FBC stock, the Court cannot conclude that the Serys entered into an express contract restricting the transfer of the SBC stock to qualified entities.  Defendants further argue that the record is insufficient to determine whether the parties intended to enter into an implied agreement restricting the transferability of the FBC stock.  (Defendants' Brief at 24-25.)  However, they ignore the fact that it is their burden to proffer evidence to support the claim that there is an implied contract.  This burden clearly has not been met.  Therefore, the Court concludes, as a matter of law, that there is no express or implied contract restricting the transferability of the SBC stock.  Summary judgment is granted in favor of the Plaintiffs on the Defendants' breach of contract counterclaim.

### D.    Tortious Interference

Plaintiffs move for summary judgment on Defendants' counterclaim for tortious interference with prospective economic advantage (Counterclaim VI).  New Jersey law requires that four elements be pled to state a valid claim for tortious interference:

> First . . . there must be allegations of fact giving rise to some reasonable expectation of economic advantage.  Second, the complaint must allege facts claiming that [] interference was done intentionally and with malice.  Malice is defined to mean that the harm was inflicted intentionally and without justification or excuse.  Third, the complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain.  A plaintiff must show that if there had been no interference[,] there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits.  Fourth, the complaint must allege that the

injury caused damage.

<u>MacDougall v. Weichert</u>, 144 N.J. 380, 404 (1996) (internal citations omitted).

Defendants allege that they were damaged as a result of the Serys

"intentionally interfer[ing] with FBC's relationships with its tenants, prospective tenants, real

estate brokers, employees and commercial lenders by purporting to market FBC's entire real

estate portfolio." (Answer ¶ 69.) As this Court has previously found in <u>Sery v. Federal Business</u>

<u>Centers, Inc.</u>, 2008 WL 1776551, *3 (D.N.J. 2008):

> [W]ith respect to an issue on which the nonmoving party bears the burden
> of proof ... the burden on the moving party may be discharged by
> 'showing'-that is, pointing out to the district court-that there is an absence
> of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at
> 325.  Once the moving party has satisfied its initial burden, the party
> opposing the motion must establish that a genuine issue as to a material fact
> exists. <u>Jersey Cent. Power & Light Co. v. Lacey Township</u>, 772 F.2d 1103,
> 1109 (3d Cir.1985). The party opposing the motion for summary judgment
> cannot rest on mere allegations and instead must present actual evidence that
> creates a genuine issue as to a material fact for trial. <u>Anderson</u>, 477 U.S. at
> 248; <u>Siegel Transfer, Inc. v. Carrier Express, Inc.</u>, 54 F.3d 1125, 1130-31
> (3d Cir.1995).

Plaintiffs move for summary judgment on this counterclaim on the basis that Defendants have

not, and indeed cannot, offer any admissible evidence upon which a reasonable jury could

conclude that (1) the Serys ever marketed FBC's entire real estate portfolio or (2) that Defendants

were damaged by the alleged marketing of the portfolio.  Plaintiffs offer the deposition testimony

of their attorney, Kevin M. Kilcullen, to support their assertion that they have never marketed the

entire real estate portfolio.  (Plaintiffs' SUF, Exhibit I at 17:18-22; 19:23-20:4; 43:11-20; 165:24-

166:9.)  Furthermore, Plaintiffs point out that Defendants have not introduced any evidence to

support their damage assertions.  In response, Defendants state that more discovery is required to

ascertain whether Plaintiffs marketed the FBC portfolio.  Further, they claim that Peter Visceglia
and Anthony Kacmarsky "would both testify about the damages sustained and may continue to
sustain as a result of plaintiffs' improper marketing of FBC and/or its real estate portfolio.
(Defendants' Response to Plaintiffs' SUF at 7.)

The Court is satisfied that Plaintiffs have met their burden of proof that no genuine issue
of material fact remains with respect to the above elements of Defendants' tortious interference
counterclaim.  At trial, Defendants bear the ultimate burden of proof on each of the elements of
their counterclaim. Yet, even after being given ample time for discovery, Defendants have
offered no evidence beyond the pleadings to show that the Serys marketed FBC's entire real
estate portfolio or that Defendants were damaged in any ways as a result of the alleged
marketing.  Defendants mere suggestion that trial witnesses will attest to damages caused by the
Plaintiffs' actions does not distract the Court from Defendants failure to provide any affidavits,
deposition testimony, or other admissible forms of evidence tending to prove that they have
suffered damage.  Defendants have attempted to create, at best, some metaphysical doubt about
whether there are factual issues which make summary judgment inappropriate.  Metaphysical
doubt about the facts will not suffice.  Matsushita, 475 U.S. at 586.  Therefore, the Court grants
Plaintiffs motion for summary judgment on Defendants' tortious interference counterclaim.

### E.    Breach of Confidentiality Agreements

The Serys entered into a number of confidentiality agreements with prospective
purchasers of their FBC stock (Counterclaim VII).  Defendants have asserted a counterclaim for
breach of various confidentiality agreements.  According to Defendants, Plaintiffs "breached the
terms of the Confidentiality Agreements by disclosing FBC's confidential and proprietary

information to persons and/or entities that had no intention of evaluating a possible sale transaction with the Serys." (Answer ¶ 78.) Defendants also contend that the Serys knew that certain signatories of the agreements would share confidential information with parties not bound by to the agreements. (<u>Id.</u>) Additionally, Defendants claim that the Serys "materially breached the Confidentiality Agreements by filing with the Court a declaration using the Court's electronic filing that contained FBC's confidential and proprietary information..." (<u>Id.</u> ¶ 79.)

Plaintiffs move for summary judgment on this counterclaim based, in part, on Defendants' failure to offer any evidence that Defendants were damaged by the alleged conduct. (Plaintiffs' Brief at 31.) The Court reiterates that a party opposing summary judgment cannot rest on mere allegations of fact and instead must present actual evidence that creates a genuine issue of material fact suitable for trial. <u>Anderson</u>, 477 U.S. at 248;  <u>Siegel Transfer, Inc. v. Carrier Express, Inc.</u>, 54 F.3d 1125, 1130-31 (3d Cir.1995). According to Plaintiffs, Defendants do not point to any evidence "that FBC suffered any damages as a result of [P]laintiffs' alleged actions or the disclosure of a third party offer for its assets that was substantially above the value that FBC itself placed on those assets." (<u>Id.</u>).

To prevail on a breach of contract counterclaim premised on the breach of a confidentiality agreement, Defendants must prove that a valid agreement existed, Plaintiffs materially breached the terms of the agreement and Defendant suffered damages as a result of the breach. <u>Fletcher</u> <u>Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 421 F.Supp.2d 831, 833 (D.N.J. 2006) (citing <u>Coyle v. Englander's</u>, 199 N.J.Super. 212, 223 (App. Div. 1985)). Yet, even after extensive discovery, Defendants offer no evidentiary support for the bare allegation that "FBC has suffered and will continue to suffer damages" based on a breach of the

confidentiality agreements.  (Answer ¶ 80.)  Indeed, Defendants completely ignored Plaintiffs'

contentions concerning the damages element both in their Opposition Brief and at oral argument

before this Court.  In the Court's view, Defendants' silence on this essential element is

deafening.  For the foregoing reasons, the Court grants Plaintiffs' motion for summary judgment

on Defendants' counterclaim for breach of confidentiality agreements.

**F.**     **Contribution, Indemnification and Misrepresentation**

Defendants have also filed counterclaims for contribution, indemnification, and

misrepresentation against Michael Sery (Defendants' Counterclaims III - V).  At oral argument

before the Court, Defendants conceded that they are no longer seriously pursuing any of these

three counterclaims.  Taking the Defendants' concession into account, and for the reasons

discussed below, the Court dismisses Defendants' contribution and indemnification

counterclaims without prejudice and grants summary judgment in favor of Plaintiffs on

Defendants' misrepresentation counterclaim.

The contribution and indemnification claims were filed in the event that Plaintiffs

prevailed on their shareholder oppression claims.  In light of the fact that this Court has

previously granted summary judgment in favor of the Defendants on Plaintiffs' claims, the

Defendants' counterclaims for contribution and indemnification are moot and are dismissed

without prejudice.  The Court grants summary judgment in favor of Plaintiffs on Defendants'

counterclaim for misrepresentation because Defendants have failed to provide any evidence that

they were damaged by Michael Sery's alleged misrepresentations.  Under New Jersey law,

damages are a necessary element of a claim for misrepresentation.  See Jewish Center of Sussex

County v. Whale, 86 N.J. 619, 624 (1981).  The Court is satisfied that Plaintiffs have met their

burden of proof on this counterclaim by showing that Defendants have again failed to provide any evidence of damages.  Once a properly supported motion for summary judgment is made, Defendants must point to a "genuine issue of material fact."  Fed. R. Civ. P. 56(c).  "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  Defendants can point to no admissible evidence to support the allegation that they were damaged. As a result, Plaintiffs' motion for summary judgment on the misrepresentation counterclaim is granted.[4]

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for summary judgment as to Counterclaims II, V, VI and VII, but **DENIES** Plaintiffs' motion for summary judgment on Counterclaims I, III and IV and **DISMISSES** these Counterclaims without prejudice.  An appropriate form of order will be filed together with this Opinion.

____ s/ Stanley R. Chesler ____
STANLEY R. CHESLER
United States District Judge

DATED: November 14, 2008



[4] As the basis for their misrepresentation counterclaim, the Defendants have alleged that Michael Sery, in his role as a member of the FBC Board, misrepresented the views of his family members to his fellow Board members.  The Court remains skeptical of Defendants' assertion that Michael Sery had a duty to fully and honestly represent the views of his family members to the FBC Board.  The Court is not aware of any legal support for such a duty.  However, since Defendants have plainly failed to make a showing that they were damaged in any way by Sery's alleged misrepresentations, the Court need not address this assertion.